UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 10/22/2026

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HECTOR MIGUEL CRUZ ANAYA,

Petitioner,

-against- 26-cv-4327 (LAK)

MARKWAYNE MULLIN., *et al.*,

Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION DENYING MOTION TO ENFORCE JUDGMENT**

Appearances:

Jessica Nicole Coffrin-St. Julien
THE BRONX DEFENDERS

*Attorneys for Petitioner*

Janet Lynne Guyon
JAMES M. MCDONALD
UNITED STATES ATTORNEY

*Attorney for Respondents*

LEWIS A. KAPLAN, *District Judge.*

Petitioner is a native of Mexico currently being held in custody by federal immigration authorities. This matter is before the Court on petitioner's motion to enforce a June 9 stipulation dismissing his petition for a writ of habeas corpus on the condition that he receive a bond hearing before an immigration judge at which certain procedures would be followed.

### *Background*

Petitioner entered this country without inspection in 2002 at the age of 18.[1] On February 27, 2026, U.S. Immigration and Customs Enforcement ("ICE") took petitioner into custody and initiated removal proceedings against him.[2] On June 2, 2026, an immigration judge ordered him removed to Mexico.[3] His appeal to the Board of Immigration Appeals is pending, and he remains in ICE custody.

Earlier this year, petitioner filed a petition for a writ of habeas corpus challenging his detention pending removal. Before the Court ruled on that petition, however, the parties settled. On June 9, 2026, the Court approved a stipulation dismissing the case without prejudice but retaining jurisdiction to enforce compliance with the stipulation's terms, which provided in relevant part:

> "The government shall, subject to counsel's availability and on a date between June 26, 2026, and July 6, 2026, provide Petitioner with an individualized bond hearing before an immigration judge at which ICE bears the burden of establishing, by clear and convincing evidence, that he poses a danger to the community or a flight risk. At that hearing, the immigration judge must consider alternative conditions of release with respect to both dangerousness and risk of flight. If the immigration judge sets a monetary bond, he or she must consider Petitioner's ability to pay in determining the appropriate bond amount."[4]

An immigration judge ("IJ") conducted a bond hearing on June 30, 2026, and denied release. The IJ found that ICE had proven by clear and convincing evidence that petitioner, if

---

1 Petition for a Writ of Habeas Corpus (Dkt 1) ¶ 22.

2 *Id.* ¶¶ 32-33.

3 Dkt 12-4 at 21-24.

4 Dkt 10.

released, would pose a danger to the community and would be a flight risk. The IJ provided reasoning on the record at the hearing and in a written decision issued on August 12, 2026.[5]

On the question of danger to the community, ICE presented evidence that petitioner has three criminal convictions.[6] In 2004, petitioner pleaded guilty to misdemeanor assault in the third degree, in violation of New York Penal Law § 120.00(1).[7] The complaint in that case alleged that petitioner knocked the alleged victim to the ground, punched and kicked him, and twice bit him on the face, causing considerable pain and swelling to the victim's nose and inflicting a laceration above the victim's eye that required stitches.[8] In 2015, petitioner pleaded guilty to driving while intoxicated, in violation of New York Vehicle & Traffic Law § 1192.3.[9] On December 3, 2025, petitioner pleaded guilty to aggravated driving while intoxicated, in violation of New York Vehicle & Traffic Law § 1192.2-a(a).[10] The indictment in that case had alleged that, on July 5, 2025, petitioner had operated a motor vehicle with a blood alcohol level of 0.23 per centum.[11] Petitioner

---

[5] Dkt 12-3 (bond hearing transcript); Dkt 12-7 (written decision).

[6] Dkt 12-4 at 4.

[7] *Id.* at 18. On September 17, 2026, with the consent of the district attorney, a state court vacated petitioner's 2004 conviction pursuant to New York Criminal Procedure Law § 440.10(1)(j) (pertaining to whether guilty pleas having potential or actual immigration consequences were knowing, voluntary, and intelligent). Dkt 12-2. In the same order, the state court convicted petitioner of the same offense – assault in the third degree – and sentenced him to "Unconditional Discharge, non pro tunc." *Id.*

[8] *Id.* at 19.

[9] *Id.* at 10.

[10] *Id.* at 6.

[11] *Id.* at 9.

received non-custodial sentences for his first two convictions.[12] For the aggravated DWI charge, however, his sentence included 30 days imprisonment.[13]

At the hearing, the IJ ruled from the bench that ICE had met its burden of proving by clear and convincing evidence that petitioner's release would pose a danger to the community. She noted that petitioner's blood alcohol content was almost three times the legal limit in connection with his 2025 arrest and expressed concern that petitioner had "re-offended while already learning that DUIs are very dangerous and costly to the community."[14] The IJ said also that there were "no alternatives to detention" that could ensure that petitioner does not drink and drive in the future, specifically mentioning "reporting to deportation officers" and submitting to "blood test[s]."[15]

In the written ruling, the IJ reasoned that petitioner's criminal record "display[ed] a pattern of his flagrant disregard for the laws of this country and the safety of others."[16] Petitioner's two DWI convictions, "when coupled with the [petitioner's] assault arrest in 2004 which tends to show a propensity toward violence, amply demonstrates the [petitioner's] dangerousness," the IJ wrote.[17] Considering petitioner's evidence, the IJ ruled that the record did not "show adequate rehabilitation or other circumstances that would mitigate the seriousness of the [petitioner's]

---

12 *Id.* at 4, 6.

13 *Id.*

14 Dkt 12-3 at 16.

15 *Id.* at 17.

16 Dkt 12-7 at 3-4.

17 *Id.* at 4.

crimes."[18] Although petitioner successfully completed alcohol abuse treatment following his 2025 arrest, he "did not appear to [have] search[ed] out alcohol rehabilitation programs on his own volition between 2015 and 2025, or before his first arrest."[19] Even more troubling, the IJ found, was "the fact that there [had been] ten years between the [petitioner's] DWIs," which the IJ said showed that petitioner "knew of the dangers of drinking and driving in 2025 . . . and made the conscience [*sic*] decision to drink and drive anyway."[20] The IJ expressly considered "alternatives to detention such as blood work or interlock devices," but concluded that "ICE does not have the ability to ensure that [petitioner] abstains from drinking and driving at all times in the future."[21] For those reasons, the IJ found that ICE had "established that the [petitioner] is a danger to the community of the U.S. by clear and convincing evidence, and there are no alternatives to detention that would suffice in this case."[22]

Petitioner has appealed the IJ's detention decision to the Board of Immigration Appeals.

---

18 *Id.*

19 *Id.* at 5.

20 *Id.*

21 *Id.*

22 *Id.* The IJ found also that petitioner was a flight risk, but for reasons explained below, the Court need not dwell on that portion of the record.

***Discussion***

Petitioner moves to enforce the June 9 stipulation. He argues that the IJ failed to hold the government to a clear and convincing burden of proof and failed meaningfully to consider alternatives to detention. He asks this Court either to order his immediate release, potentially on conditions, or to conduct its own bond hearing.

In reviewing a motion to enforce, "the Court's task is narrow."[23] The Court must decide whether respondents complied with the Court's order. The June 9 stipulation of dismissal required that petitioner be afforded a bond hearing before an IJ (1) at which ICE bore the burden of proving by clear and convincing evidence that petitioner was a danger to the community or a flight risk and (2) at which the IJ considered alternatives to detention as to both danger and flight risk.

The only question, therefore, is whether petitioner was in fact given a bond hearing at which a clear and convincing standard of proof was applied against the government and at which alternatives to detention were considered. The Court may not "review the hearing evidence *de novo*,"[24] including because Section 1226(e) of Title 8 generally precludes a noncitizen from "challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release."[25]

There is a fine line between determining whether the correct standard of proof was applied and determining whether the factfinder abused its discretion in weighing the evidence. To

---

23 *Blandon v. Barr*, 434 F. Supp. 3d 30, 38 (W.D.N.Y. 2020) (quoting *Apollinaire v. Barr*, No. 19-cv-6285, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019)).

24 *Id.* (quoting *Appollinaire*, 2019 WL 4023560, at *3).

25 *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (cleaned up) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)).

answer the former in this context, courts typically ask whether the immigration court "relied upon proof that *could not possibly establish* by clear and convincing evidence" that petitioner is a danger to the community or a flight risk.[26] To be clear and convincing, evidence must make the existence of a fact "highly probable."[27]

The record in this case demonstrates that the IJ applied the proper standard, at least with respect to dangerousness, and considered alternatives to detention as required. The IJ repeatedly and correctly identified the standard of proof as clear and convincing evidence. The record demonstrated that petitioner had pleaded guilty to three crimes over the span of roughly two decades, the facts of which were set out in records produced by the government. The criminal conduct in which petitioner previously engaged – including as recently as last year, when he was arrested for driving under the influence of alcohol at nearly three times the legal limit – was serious. Furthermore, although the record contained evidence of petitioner's rehabilitation, the IJ "reviewed the record, identified the conflicting evidence, and . . . resolved the conflicts to reach a conclusion."[28] It is not this Court's role to re-weigh that evidence. Suffice it to say that the evidence before the IJ was not so one-sided that it *could not possibly have established* petitioner's dangerousness by clear and convincing evidence.

---

26 *Caceres Molina v. Joyce*, No. 25-cv-1844, 2026 WL 2731633, at *2 (S.D.N.Y. Sept. 16, 2026) (emphasis added) (quoting *Appollinaire*, 2019 WL 4023560, at *3); *see Mathieu v. Dep't of Homeland Sec.*, No. 26-cv-4630, 2026 WL 2123350, at *1 (S.D.N.Y. July 22, 2026).

27 *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (quoting C. McCormick, *Law of Evidence* § 320, p. 679 (1954)).

28 *Medley*, 2020 WL 1033344, at *3 (quoting *Apollinaire*, 2019 WL 4023560, at *3).

The IJ expressly considered alternatives to detention, as required by the June 9 stipulation. The IJ considered at least "reporting to deportation officers," "blood test[s]," and "interlock devices."[29] Nothing in the record suggests that the IJ did not truly consider these alternatives, and it is beyond the scope of the present review for this Court decide whether the IJ gave appropriate weight to those possible conditions of release vis-à-vis the specific circumstances of petitioner's criminal history. In light of petitioner's repeated drunk driving, the IJ's stated consideration of those conditions was not so obviously unreasonable to permit this Court to conclude that an error of *law* was made.

Thus, the June 9 order was complied with to the extent that petitioner was given a bond hearing at which the IJ considered alternatives to detention and found by clear and convincing evidence that petitioner posed a danger to the community. That conclusion "renders irrelevant" petitioner's arguments concerning the IJ's consideration of flight risk.[30] Nothing in this opinion, however, should be read to dictate the outcome of the petitioner's pending appeal of the IJ's detention decision to the Board of Immigration Appeals, which reviews *de novo* "questions of law, discretion, and judgement."[31]

---

29 Dkt 12-3 at 17; Dkt 12-7 at 5.

30 *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019).

31 8 C.F.R. § 1003.1(d)(3)(ii).

***Conclusion***

For the foregoing reasons, the motion to enforce the judgment (Dkt 11) is DENIED.

SO ORDERED.

Dated: October 22, 2026

Lewis A. Kaplan
United States District Judge